**Mitch PAULSEN, Plaintiff,**

**v.**

**Orin LEHMAN, in his official capacity as Commissioner of the New York State Office of Parks, Recreation and Historic Preservation, and the New York State Office of Parks, Recreation and Historic Preservation, Defendants.**

**No. CV 90–2942 (ADS).**

United States District Court, E.D. New York.

Aug. 29, 1990.

Clifton Budd & DeMaria, New York City by Brian J. Clark and Kevin J. McGill, for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., New York City by Ira Halfond, for defendants.

## MEMORANDUM AND ORDER

SPATT, District Judge.

At issue in the plaintiff's application for a preliminary injunction is whether the defendants' denial of the plaintiff's request to distribute noncommercial religious pamphlets in a limited area of Jones Beach State Park comports with the First Amendment to the United States Constitution.

The Court concludes that the defendants' action in denying a limited permit to the plaintiff is constitutionally impermissible. Accordingly, plaintiff's application for a preliminary injunction is granted to the extent set forth below.

## I.  BACKGROUND

Plaintiff is the director of "Mitch Paulsen Outreaches," a "spiritual outreach program" which lists a Post Office Box in Baldwin, New York as its address. By Application dated August 2, 1990 plaintiff sought an "Area/Facility Use Permit" from the New York State Office of Parks, Recreation and Historic Preservation (the "State Office of Parks" or the "SOP") to distribute "noncommercial literature with a Christian message" on September 1, 1990 at the "mosaic area and adjacent sidewalks" at Jones Beach State Park. In his moving papers, the plaintiff defines the "mosaic area" at Jones Beach as "the area where the sidewalk from parking field 4 and parking field 5 converge and channel the pedestrian traffic to the boardwalk area." (*See also* Paulsen Aff., Exh. A [map of Jones Beach, indicating the "mosaic area" with the symbol " * "]).

In response to Application Question 10, "please indicate specific destination requested," the plaintiff wrote as follows:

"Mosaic area as indicated above. Alternate location: Any non-obscure board walk area, at Jones Beach. As a *last choice* any remote Jones Beach Location is OK." (emphasis in original)

The Application also stated that a total of three people would distribute literature and that "[w]e will not detain people, but simply extend an arm with leaflet and say 'it's free.' " (*Id.*)

The State Office of Parks denied plaintiff's Application in a letter dated August 10, 1990, which in relevant part stated as follows:

"This letter will confirm our telephone conversation during which I denied your request to hand out non-commercial religious literature at the mosaic area of Jones Beach State Park on September 1, 1990.

... permits are not available during holidays and holiday weekends. We limit the issuance of many permits due to limited park resources.

Typically, on holidays or holiday weekends during the summer season, attendance may reach capacity. Our operations, maintenance, police and first aid resources are strained to provide necessary service to our patrons. We try not to schedule any special activities which would further burden our resources or require additional supervision or monitoring. It is for this reason we chose to limit special activities where possible. Our purpose is not to infringe on your Constitutional rights of free speech.

Non-holiday weekends and weekdays are available for the activity you propose. We have been consistent in limiting activities and have cancelled events to insure that park resources are not overburdened. I indicated to you during our telephone conversation that other dates might be acceptable to you such as September 8, 1990, which is the following Saturday, or if you had another date that you wished ... and I would determine if that was available. You indicated to me that you are booked at other locations throughout the tri-county region, and that was the only available date you could make."

By reason of an Order issued on August 21, 1990, defendants were directed to show cause "why a preliminary injunction should not be issued preventing defendants from refusing to grant plaintiff a permit to use the Mosaic area or any other area at Jones beach State Park ... September 1 and other holiday weekends until the trial and decision of this action...." [1]

The Court held a hearing on August 24, 1990. At the hearing only one witness testified, Mr. John Norbeck, the Director of Operations at Jones Beach State Park. Mr. Norbeck testified that SOP has a "policy" of not issuing any area/facility use permits on "holiday" weekends—that is, Memorial Day, July 4 and Labor Day weekends—to insure that at these "peak" times sufficient employees are available to meet the needs of the increased number of visitors to Jones Beach. Mr. Norbeck stated that many of SOP's Jones Beach employees return to college prior to Labor Day weekend and that only 40% of its employees are available to work. Since the "stationary positions"—watchmen, toll collectors, and first aid personnel, for example—must operate at normal levels, according to Mr. Norbeck SOP must substantially reduce the number of "maintenance" and "supervisory" personnel at Jones Beach over the Labor Day weekend.

As to the plaintiff's Application, Mr. Norbeck testified that were the plaintiff's Application granted, SOP would have to assign three employees to "monitor" the plaintiff's activities. Significantly, the only reasons articulated by Mr. Norbeck as to why SOP would need to monitor the plaintiff and two associates with three employees, however, was to insure that the plaintiff was abiding by State policies and to explain the plaintiff's presence to other park patrons. Specifically, Mr. Norbeck testified as follows:

> "What happens is when our staff goes a lot of people—while we do have to monitor the activities whether its Mr. Paulsen or anybody else who applies for a permit, has to make sure that they are abiding by the location and the procedures of the policy. Also, we have people that are assigned badges when they check in and quite a few people are spent explaining why these policies are in existence to our park patrons."

Mr. Norbeck also testified that the plaintiff's proposed activity would not affect garbage collection. The Court notes that the literature at issue is a four-fold pamphlet, 2 and ¾ inches wide, 8 and ¼ inches high, and unfolds to a size of 12 inches wide and 8 and ¼ inches high. In fact, the plaintiff was granted a permit to distribute

---

**1.** Plaintiff's complaint alleges three causes of action—freedom of expression, free exercise of religion, and equal protection. Plaintiff's application for a preliminary injunction, however, is only based on his first cause of action, freedom of expression (see Paulsen Aff., ¶ 15 and Plaintiff's Memorandum of Law, pp. 6–15).

leaflets on the Saturday prior to Labor Day in 1989—September 2, 1989—and, according to the plaintiff, "peacefully distributed leaflets on the mosaic and the boardwalk areas without any disruptions[,] [w]e picked up any discarded pamphlets on the ground [and] [n]o one from the Parks Department made any complaints about our activities." (Paulsen Aff., ¶ 3)

Importantly, the defendants submitted no evidence that the plaintiff's presence at the mosaic area on September 1, 1990 would cause any strain on the security and peaceful operation of Jones Beach. No evidence was adduced that the distribution of leaflets by three persons would obstruct passageways, cause accidents, kindle altercations or cause any danger or lack of safety to anyone. In fact, during cross examination Mr. Norbeck revealed that, on average, 25% less patrons visit Jones Beach on the Saturday prior to Labor Day than on the Sunday prior to Labor Day or on Labor Day itself.[2] Also absent from the record is any evidence that any other persons or organizations submitted applications for area/facility use permits for the Labor Day weekend.

## II. DISCUSSION

■ The First Amendment to the Constitution, applicable to the State Office of Parks by reason of the Fourteenth Amendment to the Constitution (*see DeJonge v. Oregon*, 299 U.S. 353, 364, 57 S.Ct. 255, 259, 81 L.Ed. 278 [1937] ["Freedom of speech and of the press are fundamental rights which are safeguarded by the due process clause of the Fourteenth Amendment of the Federal Constitution"]; *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 n. 43, 102 S.Ct. 3409, 3422 n. 43, 73 L.Ed.2d 1215 [1982] ["First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States"] ), provides as follows:

"Congress shall make no law respecting an establishment of religion, or prohibit-

ing the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

(U.S. Const. amend. I)

The plaintiff contends that the defendants' denial of his August 2, 1990 Application violates his First Amendment rights. As this is an application for a preliminary injunction, the plaintiff "must show (1) irreparable harm, and (2) either (a) likelihood of success on the merits or (b) a sufficiently serious question going to the merits along with the balance of hardships tilting decidedly toward the plaintiff." (*Alan Skop, Inc. v. Benjamin Moore, Inc.*, 909 F.2d 59, 60 [Second Circuit 1990] [citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 [2d Cir.1979]] ).

### A. *Irreparable Harm*

■ If left undisturbed, SOP's denial of the plaintiff's Application will cause the plaintiff to suffer irreparable harm. (*See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 [1976] ["loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"]; *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1026 [2d Cir.1985] ["Precious first amendment liberties would be rendered all but meaningless if those rights could be restricted even for short periods of time"] ).

### B. *Likelihood Of Success On The Merits*

The speech at issue clearly implicates First Amendment rights (*see Schneider v. State*, 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155 [1939] ["distribution of pamphlets [have] become historical weapons in the defense of liberty"] ).

In "public forums"—"streets and parks which 'have immemorially been held in

---

**2.** Although the plaintiff elicited testimony from Mr. Norbeck at the hearing concerning the volume of patrons at Jones Beach from 1987 to the present, Mr. Norbeck testified that weather is the factor which most significantly affects at-

tendance. Recognizing that it is ill equipped to engage in meteorological forecasting, for the purpose of the plaintiff's application the Court assumes that the weather will be clement from September 1-3, 1990.

trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions' " (*Perry Educational Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 [1983] [quoting *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 [1939])— the State can only impose reasonable time, place or manner restrictions if it can show that the restrictions "are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." (*Perry Educational Assn. v. Perry Local Educators' Assn., supra,* 460 U.S. at p. 45, 103 S.Ct. at p. 955).

In "limited public forums"—"public property which the State has opened for use by the public as a place for expressive activity"—the State "is bound by the same standards as apply in a traditional public forum" as long as the State retains the open character of the forum. (*Id.* at pp. 45–46, 103 S.Ct. at p. 955). Finally, as to "nonpublic forums"—"[p]ublic property which is not by tradition or designation a forum for public communication"—"[i]n addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." (*Id.* at p. 46, 103 S.Ct. at p. 955). Distinctions in access based on subject matter and speaker identity in nonpublic forums are valid if "they are reasonable in light of the purpose which the forum at issue serves." (*Id.* at p. 49, 103 S.Ct. at p. 957; *see Calash v. Bridgeport,* 788 F.2d 80, 84 [2d Cir.1986] [city's policy of limiting access to stadium, a nonpublic forum, "to civic, charitable and non-profit organizations is . . . a reasonable restriction"]).

Given the limited record here, the Court cannot determine whether Jones Beach State Park is a public forum (*see United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 [1983] [a park]), a limited public forum (*see Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 [1975] [a municipal theatre]), or a nonpublic forum (*see Perry Educational Assn. v. Perry Local Educators' Assn., supra,* 460 U.S. at p. 46, 103 S.Ct. at p. 955 [public interschool mail facility]; *Naturalist Soc., Inc. v. Fillyaw,* 736 F.Supp. 1103, 1117 [S.D.Fla.1990] [John D. MacArthur Beach State Park]). Irrespective of the forum qualification of Jones Beach, the Court finds that the plaintiff has demonstrated a likelihood of success on the merits of its claim that SOP's denial of his Application was unconstitutional.[3]

### i. *Content Neutral*

There is no evidence in the instant record that SOP denied the plaintiff's permit Application because of disagreement with the message contained in the plaintiff's pamphlets. (*See Ward v. Rock Against Racism,* —— U.S. ——, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 [1989] ["The principal inquiry in determining content neutrality, in speech cases generally and in time, place or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys"]). In fact, Mr. Norbeck testified that the purpose of SOP's policy of denying area/facility use permits on holiday weekends was to insure that sufficient employees were available to meet the increased number of Jones Beach patrons. (*See Id.* ["The government's purpose is the controlling consideration"]; *Young v. New York City Transit Authority,* 903 F.2d 146, 159 [2d Cir.1990] ["There is nothing in the record to suggest even remotely that the [New York City] T[ran-

---

**3.** In *Carew–Reid v. Metropolitan Transp. Authority,* 903 F.2d 914, 919 [2d Cir.1990], the Second Circuit applied the *time, place, or manner* analysis set forth in *Ward v. Rock Against Racism, infra,* to a regulation banning entirely the use of amplifiers on New York City subway platforms and, having concluded that the regulation was "reasonable," stated that "we need not address the question whether the subway platforms constitute traditional, designated or limited public forums."

sit] A[uthority]'s interests in stopping begging arises because the TA objects to a particularized idea or message"]).

SOP has demonstrated that its reason for denying plaintiff's Application was content neutral.

ii. *Narrow Tailoring To Serve A Significant Government Interest*

In *Ward v. Rock Against Racism* (a "public forum" case), the Supreme Court held as follows:

"Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate content-neutral interests but that it need not be the least-restrictive or least-intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' ... To be sure, this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. ... So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative."

(*Ward v. Rock Against Racism, supra,* 109 S.Ct. at pp. 2757–58; *see also Young v. New York City Transit Authority, supra,* 903 F.2d at pp. 159–60). In upholding New York City's sound amplification guideline, the Court in *Ward v. Rock Against Racism* stated:

"The guideline does not ban all concerts, or even all rock concerts, but instead focuses on the source of the evils the city seeks to eliminate—excessive and inadequate sound amplification—and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils. This is the essence of narrow tailoring. A ban on handbilling, of course, would suppress a great quantity of speech that does not cause the evils that it seeks to eliminate, whether they be fraud, crime, litter, traffic, congestion, or noise.... For that reason, a complete ban on handbilling would be substantially broader than necessary to achieve the interests justifying it."

(*Ward v. Rock Against Racism, supra,* 109 S.Ct. at p. 2758 n. 7 [citation omitted]).

The Court finds that SOP has failed to establish *any* legitimate governmental interest in denying plaintiff's Application. Although Mr. Norbeck described the shortage of workers at Jones Beach over the Labor Day weekend, the defendants failed to state, let alone prove, any correlation between the size of its labor shortage and a legitimate state interest motivating the denial of the plaintiff's Application. In short, while Mr. Norbeck testified that he would need three employees to "monitor" plaintiff's activities, this record is devoid of any evidence as to why three employees were necessary to monitor three pamphleteers. There is simply no evidence that plaintiff's activities will result in a risk to patron safety; there is no evidence that plaintiff's activities will cause large amounts of people to congregate so as to impede the smooth operation of the beach (*see Grayned v. Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 [1972] ["two parades cannot march on the same street simultaneously, and government may allow only one"]); there is no evidence that granting plaintiff's Application would require SOP to permit other persons to distribute leaflets on September 1 (*see Heffron v. International Soc. For Krishna Consciousness, Inc.,* 452 U.S. 640, 653, 101 S.Ct. 2559, 2567, 69 L.Ed.2d 298 [1981] ["there would be a much larger threat to the State's interest in crowd control if all other religious, nonreligious, and noncommercial organizations could likewise move freely about the fairgrounds distributing and selling literature and soliciting funds at will"]; and there is no evidence that plaintiff would not comply with SOP poli-

cies if his Application were approved (*see Cantwell v. Connecticut*, 310 U.S. 296, 306–07, 60 S.Ct. 900, 904, 84 L.Ed. 1213 [1940] ["The State is likewise free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience"] ).

Plaintiff's Application is not a request for a parade, for a protest march or for formal speech making, but merely a request by three persons to hand out pamphlets in one particular area. In *Heffron v. International Soc. For Krishna Consciousness, Inc., supra*, 452 U.S. at p. 654, 101 S.Ct. at p. 2567 [1981], the Supreme Court held "that the State's interest in confining distribution, selling, and fund solicitation activities to fixed locations [at state fairgrounds] is sufficient to satisfy the requirement that a place or manner restriction must serve a substantial state interest." Absent any proof of a legitimate government interest, SOP's *total* denial of plaintiff's Application is constitutionally impermissible. (*See Ward v. Rock Against Racism, supra*, 109 S.Ct. at p. 2758 n. 7 ["a complete ban on handbilling would be substantially broader than necessary to achieve the interests justifying it"]; *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 2502–03, 101 L.Ed.2d 420 [1988] ["A complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil"] ).

iii. *Alternative Channels*

"While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, . . . a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." (*Members Of City Council v. Taxpayers For Vincent*, 466 U.S. 789, 812, 104 S.Ct. 2118, 2132, 80 L.Ed.2d 772 [1984] ).

By inviting the plaintiff to submit applications to distribute leaflets on other days, SOP argues that there are alternative channels of communication open to the plaintiff. The plaintiff, however, responds as follows:

". . . the only effective means of communication is the high volume distribution of small leaflets to a special audience not found anywhere else in the County during this holiday weekend. I could spend days or weeks on street corners and never hope to reach the volume of public concentrated within one hour on the Jones Beach Park grounds. Jones Beach Park is one of the few places in the county where I can get direct access to large numbers of adolescent teenagers and young adults during the summer months."

(Paulsen Aff., ¶ 16)

The Court finds that the defendants' have not demonstrated that there are adequate alternative channels of communication available to the plaintiff. An "adequate" alternative channel of communication to the plaintiff's Application would be to allow the plaintiff to distribute his pamphlets during specific hours or at particular locales at Jones Beach on September 1, 1990, not to allow the plaintiff to speak on other, nonholiday weekend days. By denying the plaintiff's Application, SOP has denied the plaintiff his First Amendment rights *in toto* on a day where the plaintiff would admittedly have access to a large audience; there is no viable alternative to permitting the pamphlet distribution during the peak weekend, and therefore SOP has denied the plaintiff alternative channels of communication. (*See Members Of City Council v. Taxpayers For Vincent, supra*, 466 U.S. at p. 812, 104 S.Ct. at 2132–33 [citation omitted] ["The Los Angeles ordinance does not affect any individual's freedom to exercise the right to speak and to distribute literature in the same place where the posting of signs on public property is prohibited"]; *Heffron v. International Soc. For Krishna Consciousness, Inc., supra*, 452 U.S. at p. 655, 101 S.Ct. at p. 2567 [1981] [rule limiting distribution of religious literature at state fairgrounds "does not exclude ISKCON from the fairgrounds, nor does it deny that organization the right to conduct any desired activity at some point within the forum. Its members may mingle with the crowd and orally propagate their views. The organization may

also arrange for a booth and distribute and sell literature and solicit funds from that location on the fairgrounds itself"]; *Carew-Reid v. Metropolitan Transp. Authority, supra,* 903 F.2d at p. 919 ["The amplifier ban applies only to subway platforms.... Appellees can perform in some of the subway mezzanines and above ground and still reach similar, if not the same, audiences that they could perform for on the subway platforms"]).

iv. *Reasonable Regulation*

State regulations of speech in nonpublic forums, while subject to more relaxed standards than regulations of speech in public or limited public forums, are permissible only to "reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable" (*Perry Educational Assn. v. Perry Local Educators' Assn., supra,* 460 U.S. at p. 46, 103 S.Ct. at p. 955). SOP's denial of plaintiff's Application neither reserves Jones Beach for its intended purpose nor is reasonable.

Plaintiff's Application does not ask permission to distribute pamphlets on the beach itself, and thus SOP's denial of plaintiff's Application cannot be justified as a regulation designed to reserve Jones Beach for its intended purpose, *i.e.* bathing (*compare Naturalist Soc., Inc. v. Fillyaw,* 736 F.Supp. at p. 1116 ["personal solicitation of the park's visitors on the beach would be incompatible with the property's primary purpose"]). In fact, SOP admittedly grants similar applications at Jones Beach for all days but holiday weekends.

As to the reasonableness of the defendants' action, despite the fact that the plaintiff listed alternative locations other than the "mosaic" area in his Application (*see* Paulsen Aff., Exh. H), SOP banned the plaintiff from distributing pamphlets throughout the length and breadth of Jones Beach at any time of day during the three day Labor Day weekend. There is no rational basis for the 72 hour total ban for the entire Jones Beach complex.

In addition, SOP's inability to establish any reason for its alleged need to assign three employees to "monitor" plaintiff's activities; SOP's inability to establish that assigning three employees to monitor the plaintiff for a limited period of time at a confined locale will strain SOP's ability to serve its patrons on September 1, 1990; and SOP's inability to establish that it could not hire three additional employees to monitor the plaintiff's activities for a limited period of time (*see Schneider v. State, supra,* 308 U.S. at p. 162, 60 S.Ct. at p. 151 ["Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution [of literature] results from the constitutional protection of the freedom of speech and press"]) demonstrates that the defendants' action was unreasonable.

The Court finds that SOP's denial of plaintiff's Application did not reserve Jones Beach for its intended purpose and was not reasonable.

III. CONCLUSION

For the reasons discussed above, the Court finds that SOP's denial of the plaintiff's Application will cause the plaintiff to suffer irreparable harm and that there is a likelihood of success on the merits of the plaintiff's claim that SOP's denial of his Application violated the First Amendment.

Being cognizant of the fact that SOP will operate at only 40% of its full workforce on September 1, 1990 and that, presuming clement weather, Jones Beach State Park will be at peak capacity on that day, plaintiff's application to preliminarily enjoin the defendants from denying him a permit to distribute noncommercial pamphlets which contain a religious message on September 1, 1990 at the mosaic area of Jones Beach State Park is granted only to the following extent: the defendants are directed to issue a permit to the plaintiff which allows the plaintiff and two other persons to distribute the literature set forth in his August 2, 1990 Application from 11:00 a.m. to 2:00 p.m. on September 1, 1990 at the mosaic area (as defined by the plaintiff [*see supra,* p. 859]) of Jones Beach State Park subject to the conditions that (a) the plaintiff obtain his park badges at 7:45 a.m. on

September 1, 1990; and that (b) at 2:00 p.m. on September 1, 1990 the plaintiff clean up all of his pamphlets which have been discarded at or near the mosaic area.

This ruling is solely directed to the plaintiff's request for a preliminary injunction as to the September 1, 1990 outing.

At this time, the Court makes no determination as to the constitutionality of the defendants' policy not to issue any area/facility use permits on all holiday weekends or the merits of plaintiff's other causes of action.

SO ORDERED.