Erica **FORD**, Miriam Plata, Quentin Walcott, Jose Rivas–Cinque, Viola Plummer, and William Clay, Plaintiffs,

v.

W. Ann **REYNOLDS**, Robert E. Diaz, Thomas Minter, Marcia Keizs, Ronald Brown, Charles McCabe, Jose Elrique, The City University of New York, and York College, Defendants.

No. 96 CV 0246(SJ).

United States District Court, E.D. New York.

July 23, 2004.

Ronald B. McGuire, Esq., Jersey City, NJ, for Plaintiffs.

Eliot Spitzer, Esq., Attorney General of the State of New York City by Michael Cohen, Esq., Assistant Attorney General, for Defendants.

## MEMORANDUM AND ORDER

JOHNSON, Senior District Judge.

Plaintiffs Erica Ford ("Ford"), Miriam Plata ("Plata"), Quentin Walcott ("Walcott"), Jose Rivas–Cinque ("Rivas–Cinque"), Viola Plummer ("Plummer"), and

William Clay ("Clay") (collectively, "Plaintiffs"), brought this suit under 42 U.S.C. § 1983 alleging the violation of their First, Fifth, and Fourteenth Amendments rights by defendants Ann Reynolds ("Reynolds"), Robert E. Diaz ("Diaz"), Thomas Minter ("Minter"), Marcia Keizs ("Keizs"), Ronald Brown ("Brown"), Charles McCabe ("McCabe"), and Jose Elique ("Elique") [1], in their official and individual capacities, and the City University of New York ("CUNY") and York College ("York College" or "the College") (collectively, "Defendants"). At the time the action was filed, all of the individual Defendants were officials of either CUNY or York College. Plaintiffs alleged that Defendants violated their constitutional rights by: (1) attempting to bar outside speakers from participating in the College's 1995 Black Solidarity Day ("BSD") program based on the content of the proposed speech; (2) initiating disciplinary action against student Plaintiffs Ford, Plata, and Walcott for participating in the 1995 BSD event; and (3) denying payment of speakers' honoraria to Plaintiffs Plummer and Clay. Plaintiffs sought declaratory and injunctive relief, as well as compensatory and punitive damages.

By Memorandum and Order dated September 28, 2001, this Court granted summary judgment in favor of Defendants, dismissing all claims for lack of subject matter jurisdiction pursuant to the Eleventh Amendment. The Second Circuit Court of Appeals remanded the case for consideration of four issues that this Court neglected to address in its September 28, 2001 decision. Presently before the Court is Defendants' motion for summary judgment with respect to these four issues.

For the reasons stated herein, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The facts of this case arising from the 1995 BSD event were detailed in this Court's September 28, 2001 Memorandum and Order, and will not be repeated here. On October 26, 2001, Plaintiffs filed a Notice of Appeal to the Second Circuit. On January 17, 2003, the Court of Appeals affirmed the entry of summary judgment in favor of Defendants CUNY, York College, Keizs, Reynolds, Diaz, Minter, Brown, McCabe, and Elique—the latter six in their official capacities. The judgment was also affirmed as to all claims for injunctive relief. The Court of Appeals remanded the case to this Court for review of the claims for monetary and declaratory relief against the aforementioned six Defendants in their individual capacities. Specifically, the Court of Appeals directed this Court to consider the following issues:

(1) whether Reynolds, Diaz, Minter, Brown, McCabe or Elrique [sic] is entitled to qualified immunity; (2) whether the defendants' failure to submit affidavits or deposition testimony from Reynolds, Diaz, McCabe and Elrique [sic] precludes a grant of summary judgment in their favor on the grounds of qualified immunity; (3) whether the defendants met their burden at the summary judgment stage as to the plaintiffs' four claims for declaratory relief; and (4) whether the plaintiffs' complaint sets forth any claim for relief based on the defendants' actions in regard to the 1993 and 1994 BSD events, as opposed to merely mentioning those events as fac-

---

1. Defendants note that Defendant Elique's name is misspelled as "Elrique" in previous court documents concerning this matter. (*See* Appellate Br. for Defs.-Appellees at 10.)

Although the case heading will not change, this Court will hereafter refer to this defendant as "Elique."

tual background for claims relating to the 1995 BSD event.

*Ford v. Reynolds,* 316 F.3d 351, 356 (2d Cir.2003).

## DISCUSSION

### I. Claims Related to 1993 and 1994 BSD Events

Plaintiffs claim that Defendants unsuccessfully tried to ban speakers for the 1993 and 1994 BSD events at York College and to punish student organizers for their participation in the events. (Compl.¶¶ 49–67.) The Complaint alleges that in both years, the student Plaintiffs followed all appropriate college policies and procedures concerning event approval. (Compl.¶¶ 50, 61.)

This Court may not consider matters outside Plaintiffs' Complaint in its determination as to "whether the plaintiffs' complaint sets forth any claim for relief based on the defendants' actions in regard to the 1993 and 1994 BSD events . . . ." *Ford,* 316 F.3d at 356. Thus, the Court will treat this portion of Defendants' motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Standard for Motion to Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio,* 722 F.2d 1013, 1015–16 (2d Cir.1983) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering a motion to dismiss, the court must accept as true all material facts well-pleaded in the complaint and must make all reasonable inferences in the light most favorable to the plaintiff. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994). Moreover, a district

court must limit its analysis to the complaint, and any attached exhibits or documents incorporated into the complaint by reference. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). "For purposes of a motion to dismiss, [the Second Circuit has] deemed a complaint to include . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000).

### B. Assessment of Claims

With respect to the 1993 event, the Complaint alleges that York College Director of Student Activities Kieron Sharpe ("Sharpe") and Associate Dean of Students Jacqueline Ray ("Ray") demonstrated aversion toward the proposed 1993 BSD program at York College and initiated but never pursued disciplinary charges against Plaintiffs Walcott and Rivas–Cinque after an incident involving advertising for the event. (Compl.¶¶ 61–67.) However, Plaintiffs' allegations concerning the 1993 event do not include specific claims related to any individual Defendant named in this action, and this Court has already dismissed all claims as to CUNY and York College. (*See* Mem. & Order, Sept. 28, 2001.) Therefore, the only way in which this Court could consider Plaintiffs' assertions with respect to the 1993 event is if Sharpe and Ray were added as defendants to this action.

■ Rule 21 provides, in relevant part, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. "Under Rule 21 courts have broad discretion to determine whether to bring in a party at any stage of the litigation." *Cline v. 1–888–Plumbing*

*Group, Inc.*, 99 CV 1401, 2000 WL 342689, at *2 (S.D.N.Y. March 30, 2000). Because Plaintiffs did not seek to add Sharpe and Ray as defendants at any time in the eight years this lawsuit has been pending, and because such an addition at this stage in the litigation would cause substantial delay, this Court will not allow the addition of Sharpe and Ray as defendants to this action. Thus, this Court finds that Plaintiffs' Complaint fails to state a claim for relief based on Defendants' actions with respect to the 1993 BSD event.

■ With regard to the 1994 event, the Complaint alleges that Vice President Brown cancelled the scheduled BSD program with four days' notice, but that the event went on as planned after a student demonstration. (Compl.¶¶ 51–56.) Plaintiffs contend that Brown subsequently blocked the academic registration and records of Plaintiffs Ford and Walcott, in violation of the CUNY by-laws, but thereafter lifted the registration and record restrictions and did not pursue disciplinary charges. (Compl. ¶¶ 57–60; Ex. N, O.) Because Plaintiffs assert no injury with respect to the 1994 event, they fail to state a claim for relief against Defendant Brown or any other individual defendant.

Because the causes of action and relief sought are limited to the actions arising from the 1995 BSD event, and because the information contained in Plaintiffs' Complaint concerning the 1993 and 1994 BSD events served only as factual background for claims relating to the 1995 BSD event, this Court finds that Plaintiffs' Complaint fails to set forth any claim for relief based on Defendants' actions with regard to the 1993 and 1994 BSD events.[2]

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988).

The party seeking summary judgment has the burden of showing that no genuine factual dispute exists. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995). Once the movant has made a showing that there are no genuine issues of material fact to be tried, the burden shifts to the nonmoving party to raise triable issues of fact. *See Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. Mere conclusory allegations will not suffice. Instead, the nonmoving party must present "significant probative supporting evidence" that a material factual dispute exists. Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

---

**2.** This Court previously rejected Plaintiffs' late submission of summary judgment materials, in light of Plaintiffs' failure to comply with the Court's briefing schedule. (*See* Mem. and Order, Sept. 28, 2001.) Plaintiffs have repeatedly requested that this Court reconsider that decision. This Court reiterates its decision not to admit Plaintiffs' opposition papers.

Even if this Court were to consider Plaintiffs' 56.1 summary judgment materials, however, Plaintiffs' claims with respect to the 1993 and 1994 events would fail. Discovery focused almost entirely on the 1995 BSD event, and Plaintiffs failed to sufficiently address the 1993 and 1994 BSD events in their opposition papers. (*See* J.A. at A–186–87, ¶¶ 24–25.)

A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmoving party. *Id.* In conducting its analysis, the court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. *Id.* at 254–255, 106 S.Ct. 2505; *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995). However, the court should grant summary judgment where the nonmoving party's evidence is merely colorable, conclusory, speculative, or not significantly probative. *See Parker v. Chrysler Corp.*, 929 F.Supp. 162, 165 (S.D.N.Y.1996).

In *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), the Supreme Court clarified that even when the plaintiff's affirmative case requires a showing of the subjective element of retaliatory motivation on the part of the defendant, as part of this case does (*see* Part V), the above standards for summary judgment apply. In that case, the U.S. Court of Appeals for the D.C. Circuit had adopted a "requirement of clear and convincing evidence of improper motive [as its] latest effort to address a potentially serious problem: because an official's state of mind is 'easy to allege and hard to disprove,' insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials." *Crawford–El*, 523 U.S. at 584–85, 118 S.Ct. 1584. The court of appeals relied on the language and policy concerns underlying *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which eliminated the subjective prong of the qualified immunity defense by holding that the relevant test to evaluate the official's conduct is the "objective legal reasonableness" of the unlawful action assessed in light of the law "clearly established at the time it was taken." In *Crawford–El*, however, the Supreme Court clarified that when motive is an element of the constitutional wrong alleged in the plaintiff's affirmative case, the subjective inquiry cannot be avoided. However, the Court held that a plaintiff should not be required to meet a heightened burden of proof simply because his or her cause of action includes a motive element:

> [A]lthough evidence of improper motive is irrelevant on the issue of qualified immunity [under *Harlow v. Fitzgerald* ], it may be an essential component of the plaintiff's affirmative case. Our holding in *Harlow*, which related only to the scope of an affirmative defense, provides no support for making any change in the nature of the plaintiff's burden of proving a constitutional violation.

*Crawford–El*, 523 U.S. at 589, 118 S.Ct. 1584.

## III. Defendants' Failure to Submit Affidavits or Deposition Testimony

■ There is no Rule 56 requirement that affidavits or deposition testimony be used in support of a motion for summary judgment. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court made clear that "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* The Court noted that the plain language of Rules 56(a) and (b) supports this interpretation, by providing that parties may move for summary judgment "with or without supporting affidavits." *Id.* (citing Fed.R.Civ.P. 56(a) and (b)). Moreover, this permissive rule applies

equally to other supporting matters and material, such as depositions and interrogatories. 11 James Wm. Moore et al., *Moore's Fed. Practice—Civil* ¶ 56.14 (3d ed.2004).

Accordingly, Defendants' failure to submit affidavits or deposition testimony does not preclude summary judgment in their favor.

## IV. Monetary Damages

While the parties vigorously debate whether Plaintiffs' constitutional rights were violated by the actions of Defendants Reynolds, Diaz, Minter, Brown, McCabe, and Elique (collectively, the "individual defendants"), and if so, whether these defendants were entitled to qualified immunity, neither party adequately addresses the question of whether Plaintiffs have standing to bring this suit for damages. Nevertheless, the Court will consider the standing issue. *See* Fed.R.Civ.P. 12(h)(3); *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541–42, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (finding that if the parties fail to raise the question, the issue of standing should be addressed sua sponte by the court).

■ To have standing, a plaintiff must satisfy a three-part test under Article III of the Constitution. The plaintiff must demonstrate (1) a "distinct and palpable injury," (2) which is caused by the challenged activity, and (3) which will be redressed by the remedy sought. *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

## A. Student Plaintiffs

Three days before the 1995 BSD event, President Minter announced his decision to ban outside speakers from the event. (Defs.' Rule 56.1 Statement ¶ 22.) Then, on the day of the event, Vice President Brown offered to allow the program to proceed with the outside speakers on the condition that the student organizers (1) agree to hold the program in the College's Performing Arts Center instead of the Atrium, and (2) accept revised procedures for future student-sponsored events. (Defs.' Rule 56.1 Statement ¶ 29.) In the end, after a two and a half hour delay, the event went forward as originally planned, with the outside speakers giving their speeches in the Atrium. (Defs.' Rule 56.1 Statement ¶¶ 38, 39; Appellate Br. for Defs.-Appellees at 64.)[3] Although the College brought disciplinary charges against Student Plaintiffs Walcott, Ford, and Plata for their alleged misconduct regarding the event, those charges were subsequently dismissed. (Defs.' Rule 56.1 Statement ¶¶ 42–44.)

■ In this case, the Student Plaintiffs suffered no constitutional injury, since in all material respects, the 1995 BSD event took place as originally planned. Although they never make this claim, the only possible injury the Student Plaintiffs could allege is that the 1995 BSD event began at 11:30 a.m., instead of 9:00 a.m., as originally planned, and that the outside speakers were delayed between one hour and several hours in giving their speeches. (J.A. A–170–711, ¶¶ 24, 25; Appellate Br. for Defs.-Appellees at 64.) First, Plaintiffs concede

---

**3.** This court "has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion." *Monahan v. New York City Dept. of Corrections* 214 F.3d 275, 292 (2d Cir.2000). Therefore, although it is not required to do so, this Court will review and make reference to the parties' appellate briefs, joint appendix, and accompanying exhibits, all of which were made a part of the district court record after appellate proceedings had concluded.

that much of this delay was attributable to factors having nothing to do with the original speaker ban. (*See* J.A. A–170–711, ¶ 24.) Second, even if the individual Defendants' decisions with respect to the event were unlawful, and in fact affected the Student Plaintiffs' protected First Amendment interests, a delay of only a few hours was not a sufficient injury to invoke the protections of Article III of the Constitution. *See Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("There is, of course a *de minimis* level of imposition with which the Constitution is not concerned"); *Brown v. Stone*, 66 F.Supp.2d 412, 436 (E.D.N.Y.1999) ("[A]ny perceived chilling effect would appear to be *de minimus,* and hence not of constitutional significance."); *Arce v. Banks*, 913 F.Supp. 307, 309 (S.D.N.Y.1996) ("At most, [plaintiff] has suffered a *de minimus* infringement of his First Amendment rights which is not actionable in a § 1983 petition"); *Laird v. Tatum*, 408 U.S. 1, 14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (holding that plaintiffs who alleged a "subjective chill" of their First Amendment rights failed to establish "specific present objective harm or a threat of specific future harm").

Because the Student Plaintiffs have failed to show that they have suffered a "distinct and palpable injury," the Court finds that they lack standing to bring this claim for money damages. *See Valley Forge Christian College*, 454 U.S. at 472, 102 S.Ct. 752. Therefore, the Court need not reach a ruling on the merits of the Student Plaintiffs' constitutional claims. *See Laird*, 408 U.S. at 14, 92 S.Ct. 2318; *Bordell v. Gen. Elec. Co., et al*, 922 F.2d 1057, 1061 (2d Cir.1991).

**B. Speaker Plaintiffs**

Plaintiffs contend that the College's 1995 BSD speaker ban was overbroad as applied to the Speaker Plaintiffs, that Defendants did not provide an adequate alternative venue for the event, and that Defendants' refusal to pay the speakers their contracted fees unconstitutionally retaliated against the Speaker Plaintiffs. (Appellate Br. for Pltfs.-Appellants at 59–64.) Ultimately, however, the Speaker Plaintiffs were permitted to speak in the Atrium, as originally planned. The only possible injuries that could be alleged are (1) the short delay (lasting somewhere between one hour and several hours) in the commencement of the outside speakers' presentations, and (2) Defendants' failure to pay the Speaker Plaintiffs their agreed-upon honoraria. (*See* Appellate Br. for Pls.-Appellants at 60, 63–64; Appellate Br. for Defs.-Appellees at 63–65.) The Court will address the issue of the delay below, and will address the issue of the Defendants' failure to pay the Speaker Plaintiffs their agreed-upon honoraria in Section V.

■ The same analysis used with respect to the student Plaintiffs applies to the Court's consideration of the short delay in the commencement of the speakers' presentations. Because the Speaker Plaintiffs were permitted to speak in the Atrium, albeit after a short delay, they cannot demonstrate that they suffered an injury to their First Amendment rights sufficient to confer standing. *See Ingraham*, 430 U.S. at 674, 97 S.Ct. 1401; *Brown*, 66 F.Supp.2d at 436; *Arce*, 913 F.Supp. at 309; *Laird*, 408 U.S. at 14, 92 S.Ct. 2318.

Like the student Plaintiffs, the Speaker Plaintiffs have failed to show that they have suffered a "distinct and palpable injury" with respect to the short delay in the commencement of the their presentations. *See Valley Forge Christian Coll.*, 454 U.S. at 472, 102 S.Ct. 752. The Court finds that the Speaker Plaintiffs lack standing to bring this claim for money damages.

Therefore, the Court need not reach a ruling on the merits of the Speaker Plaintiffs' constitutional claims with respect to the delay in their presentations. *See Laird,* 408 U.S. at 14, 92 S.Ct. 2318; *Bordell,* 922 F.2d at 1061.[4]

## V. Speaker Plaintiffs' First Amendment Retaliation Claim

With respect to Defendants' failure to pay Speaker Plaintiffs Clay and Plummer their agreed-upon honoraria of $300 each, Plaintiffs claim that they "should have an opportunity to show that the decision not to pay the speakers was retaliatory, taken for an invidious motive and intended to punish and chill the [Plaintiffs] in the exercise of their free speech rights." (Appellate Br. for Pls.-Appellants at 64; Ex. to J.A., E–13–15, E–19–21.) Defendants contend that "[t]he College's decision not to authorize payment was based on the fact that the student-organizers had contravened Acting President Minter's decision to decline authorization for outside speakers" at the 1995 BSD event. (Defs.' Rule 56.1 Statement ¶ 41.)

 Under 42 U.S.C. § 1983, a plaintiff may sue for constitutional violations committed by state actors. Although a government action alone may not violate the Constitution, it may nevertheless be a con-

stitutional tort if it is motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. *See, e.g., Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (holding that correction officer's misdirection of inmate's personal belongings may constitute a claim of retaliation for exercise of First Amendment rights); *Bd. of County Comm'rs, Wabaunsee County v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (finding that nonrenewal of plaintiff's government contract in retaliation for his exercise of free speech is actionable); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) ("[I]f the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited"). Section 1983 provides a remedy for such motive-based constitutional torts committed by government officials.

### A. Standing

 Before turning to the three elements of the First Amendment retaliation claim at issue here, the Court will consider whether the Speaker Plaintiffs have standing to bring that claim. Retaliation for the exercise of constitutional rights is itself a constitutional violation.[5] *Crawford–El,* 523

---

4. With respect to the issue of delay, Plaintiffs claim that the "[l]oss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." (Appellate Br. for Pltfs.-Appellants at 60 (*citing Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).) The Court finds *Elrod* inapplicable here. At issue in *Elrod* was whether the issuance of a preliminary injunction was properly directed by the Court of Appeals. Here, in contrast, the issue is whether the Speaker Plaintiffs are entitled to monetary damages due to an alleged violation of their constitutional rights. The three-justice plurality in *Elrod* made clear that irreparable harm could only be found

when "First Amendment interests were either threatened or in fact being impaired *at the time relief was sought."* 427 U.S. at 373, 96 S.Ct. 2673 (emphasis added). It is indisputable that in this case, the Speaker Plaintiffs' First Amendment rights were not being threatened or impaired at the time they brought this lawsuit.

5. "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right. Retaliation is thus akin to an 'unconstitutional condition' demanded for the receipt of a government-provided benefit." *Crawford–El,* 523 U.S. at

U.S. at 589 n. 10, 118 S.Ct. 1584. As discussed above, a plaintiff establishes standing by demonstrating (1) a "distinct and palpable injury," (2) which is caused by the challenged activity, and (3) which will be redressed by the remedy sought. *Valley Forge*, 454 U.S. at 472, 102 S.Ct. 752. As long as the injury is "distinct and palpable" rather than abstract, conjectural, or hypothetical, it is sufficient to confer standing. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

■ The facts of this case presented in the complaint and depositions indicate that the Speaker Plaintiffs suffered a real rather than hypothetical injury. At the decision of Defendant Brown, York College never paid Plaintiffs Clay and Plummer their agreed-upon honoraria of $300 each. (*See* J.A. at A–139, ¶ 18 (Decl. Ronald Brown).) If this pecuniary injury was inflicted in retaliation for constitutionally protected conduct, as Plaintiffs allege, it is traceable to the unlawful conduct of the individual defendants, and a damages remedy under § 1983 would offer redress.

**B. The Elements of a First Amendment Retaliation Claim**

■ Having determined that the Speaker Plaintiffs have met the threshold requirement for standing, this Court will consider the Speaker Plaintiffs' retaliation claim in more detail. A plaintiff asserting a First Amendment retaliation claim must allege that: (1) he or she has an interest protected by the First Amendment; (2) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights. *Connell v. Signoracci*, 153 F.3d 74, 79 (2d

Cir.1998); *Kerman v. City of New York*, 261 F.3d 229, 241–42 (2d Cir.2001).

■ "The chilling effect cannot be remote or speculative. Actual inhibition is required." *Colondres v. Scoppeta*, 290 F.Supp.2d 376, 382 (E.D.N.Y.2003) (*citing Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir.1992); *Hankard v. Town of Avon*, 126 F.3d 418, 424 (2d Cir.1997); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir.2001) (holding that plaintiff must show her First Amendment rights were actually chilled)). Moreover, a *de minimus* deterrence from engaging in protected speech is not constitutionally significant. *Colondres*, 290 F.Supp.2d. at 382 (*citing Ingraham*, 430 U.S. at 674, 97 S.Ct. 1401; *Brown*, 66 F.Supp.2d at 436; *Arce*, 913 F.Supp. at 309).

■ In the voluminous documents associated with this case, Plaintiffs never allege that Defendants' refusal to pay Plummer and Clay their agreed-upon honoraria chilled the exercise of these individuals' First Amendment rights. Because Plaintiffs have failed to allege any actual chill or deterrence, this Court must conclude that Plummer and Clay did not suffer the harm necessary to support their retaliation claim.

■ Because Plaintiffs have not made out a *prima facie* case of First Amendment retaliation, this Court need not reach the issue of whether Mead is entitled to qualified immunity. *See Salahuddin v. Mead*, No. 95 CV 8581, 2002 WL 1968329, at *6 (S.D.N.Y.2002); *Kerman v. City of New York*, 261 F.3d 229, 235 (2d Cir.2001) (citations omitted) ("When determining whether qualified immunity protects an official, we must first determine whether the plaintiff has presented facts which, if prov-

589 n. 10, 118 S.Ct. 1584 (internal citations omitted).

en, demonstrate that the defendant violated a constitutional right.").[6]

## VI. Declaratory Relief

Plaintiffs seek a final declaratory judgment stating: (1) "that the speakers [sic] ban imposed by Defendants at York College on November 6, 1995 was unconstitutional;" and (2) "that Defendants' denial of payment to Plaintiffs Viola Plummer and William Clay and other speakers and performers who fulfilled the terms of their contracts by speaking or performing at the 1995 Black Solidarity Day event at York College was illegal[.]" (Compl. at 32, ¶¶ (2)(a) and (d).)[7]

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides, in pertinent part:

[I]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]

▮▮▮▮ Declaratory judgment actions are subject to the case-or-controversy requirement of Article III of the Constitution. *See DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164

(1974); *Fox v. Bd. of Trustees of State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir. 1994), *cert. denied,* 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995). Thus, before the Court may render a declaratory judgment, it must be satisfied that (1) an independent basis of federal subject matter jurisdiction exists, *Paulsen v. Lehman,* 839 F.Supp. 147, 156 (E.D.N.Y.1993), and (2) there is a "substantial controversy" that is (a) definite and concrete, *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617 (1937), and (b) exists between two parties having adverse legal interests of sufficient immediacy and reality to justify specific relief under the Declaratory Judgment Act. *Md. Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Golden v. Zwickler,* 394 U.S. 103, 108–09, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *Kidder, Peabody & Co. v. Maxus Energy Corp.,* 925 F.2d 556, 562 (2d Cir.1991), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991). A plaintiff seeking declaratory relief establishes standing by (1) identifying a specific injury he or she has suffered and (2) demonstrating a likelihood that he or she will be similarly in-

---

6. To the extent the Speaker Plaintiffs are seeking retroactive monetary damages in the form of the unpaid honoraria, such relief is barred by the Eleventh Amendment. Those damages are amounts that Plaintiffs allege should have been paid not by the individual defendants personally, but by York College, which is an arm of the state for purposes of sovereign immunity. *See, e.g., Sacay v. Research Found. of the City Univ. of New York,* 193 F.Supp.2d 611, 625 (E.D.N.Y.2002). A claim for retroactive money damages "requires the payment of funds from the state treasury, and is barred by the Eleventh Amendment, absent a waiver of immunity by the State." *Dwyer v. Regan* 777 F.2d 825, 836 (2d Cir.1985) (internal citations omitted). Because the State has not waived its immunity here, this claim is barred.

7. Plaintiffs originally also sought a declaratory judgment stating "that the use of attorneys from the office of the CUNY General Counsel to simultaneously serve as prosecutors and advisors to the tribunal in student disciplinary cases violates the right of an accused student to have the charges heard by an impartial tribunal," and "that the disciplinary charges against Plaintiffs Ford, Plata and Walcott are barred by CUNY Trustees By–Law 15.2(b), which imposes a 30 day statute of limitations on investigations of complaints of student disciplinary violations[.]" (Compl. at 32, ¶¶ (2)(b) and (c).) However, Plaintiffs later acknowledged that these two claims were not viable. (*See* Letter from R. McGuire to Judge Johnson of May 12, 2003 at 4.) This Court agrees and therefore will not address these two claims.

jured in the future. *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future"); *McCormick v. School Dist. of Mamaroneck,* 370 F.3d 275, 284 (2d Cir.2004). The decision to grant declaratory relief rests in the sound discretion of the district court, *Christopher P. v. Marcus,* 915 F.2d 794, 802 (2d Cir.1990), *cert. denied,* 498 U.S. 1123, 111 S.Ct. 1081, 112 L.Ed.2d 1186 (1991), and such a determination may only be properly made on a case-by-case basis. *See Paulsen,* 839 F.Supp. at 156.

■ Because the case-or-controversy requirement demands the existence of a real and justiciable controversy, disputes over the rights and duties of a party whose challenged activities have ceased may be dismissed on grounds of mootness. *See Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 95–96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). "A case becomes moot when a court is no longer able to grant effective relief because the dispute has been resolved through other means, or because the passage of time has made the claim stale, and it is unlikely that the precise conditions of the case will recur." *Cook v. Colgate Univ.,* 992 F.2d 17, 19 (2d Cir.1993); *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (citations omitted) (holding that a case is moot when "the parties lack a legally cognizable interest in the outcome"); 12 James Wm. Moore et al., *Moore's Fed. Practice—Civil* ¶ 57.22 (3d ed.2004).

■ Situations "capable of repetition, yet evading review" constitute an exception to the mootness doctrine. *Cook,* 992 F.2d at 20 (citations omitted). Absent a class action, the exception is unavailable unless the duration of the challenged action is too short to be fully litigated prior to its end, and it is reasonable to expect that the same complaining party would be subjected to the same action. *Mincone v. Nassau County Cmty. Coll.,* 923 F.Supp. 398, 403 (E.D.N.Y.1996) (citing *Cook,* 992 F.2d at 19).

**A. Student Plaintiffs**

Plaintiffs claim that the Student Plaintiffs have standing and that their claims fall within the exception to the mootness doctrine. They contend that (1) Plaintiff Rivas–Cinque [who has since graduated] was litigating in his official capacity as Student Government President, (2) the Student Government was one of the sponsoring organizations of the 1995 BSD event, and (3) all four Student Plaintiffs were elected officers of the student government when they sued. (*See* Appellate Br. for Pls.-Appellants at 51; Compl. ¶¶ 8, 15–18.) Therefore, Plaintiffs contend, "Rivas–Cinque has standing to seek whatever declaratory or injunctive relief may be necessary to prevent future violations of the First Amendment rights of the Plaintiffs or similarly situated students, to deter further acts of retaliation by the Defendants, and to establish the limits of Defendants' discretion in restricting access to a public forum." (Appellate Br. for Pls.-Appellants at 51–52.)

■ In the first place, the Student Plaintiffs lack standing to bring a claim for declaratory relief. As discussed *supra,* the Student Plaintiffs have failed to identify a specific injury inflicted upon them by Defendants with respect to the 1995 BSD event, or a likelihood that Defendants would inflict an injury upon them in the future. *See Deshawn E. by Charlotte E.,* 156 F.3d at 344; *McCormick,* 370 F.3d at 284. All of the disciplinary charges against the Student Plaintiffs were

dropped, and the event went on as originally planned, in all material respects. *See supra* at IV. Furthermore, because the Student Plaintiffs have since graduated and do not represent the York College Student Government in this suit, *see infra*, they have not demonstrated a likelihood of future injury by Defendants. *Id.*

■ Even if the Student Plaintiffs had standing to bring their claims for declaratory relief, such claims would be moot. In general, students' graduations render their individual declaratory claims moot. *Fox*, 42 F.3d at 140; *Mincone*, 923 F.Supp. at 403. However, a student who has graduated may still be found to have a justiciable claim if he or she sued in a "representational capacity" as the leader of a student organization. *See Brandon v. Bd. of Educ. of Guilderland Cent. Sch. Dist.*, 635 F.2d 971, 973 n. 1 (2d Cir.1980), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981) (finding that high school students who had since graduated were acting in a representational capacity in challenging defendants' refusal to allow their student prayer group to conduct daily prayer meetings on school property); *Trachtman v. Anker*, 563 F.2d 512, 514 n. 1 (2d Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978) (holding that graduation of one plaintiff, who was editor-in-chief of student newspaper, did not render moot an action to establish newspaper's right to conduct and publish a survey, since plaintiffs were acting on behalf of student association and its members, both of whom had continuing stake in the litigation).

Although Plaintiff Rivas–Cinque brought this suit in his individual and official capacity as President of the York College Student Government, the record does not demonstrate that he was acting on behalf of the Student Government. (*See* Compl. ¶ 18; Defs.' Rule 56.1 Statement ¶ 17.) Similar to the complaint in *Cook*, Plaintiffs' complaint seeks damages "solely on behalf of the plaintiffs in their individual capacities, not as representatives of the [Student Government] or other 'similarly ·situated' individuals." 992 F.2d at 20. As Defendants ·persuasively argue, "the student plaintiffs cannot take advantage of the 'representational capacity' exception to the mootness doctrine because there is no factual basis for finding that the action was effectively brought on behalf of a well-defined organization or class." (Appellate Br. for Defs.-Appellees at 43.) Additionally, the record does not indicate that Rivas–Cinque or any of the other Plaintiffs were seeking to vindicate the rights of the Student Government. *Cf. Brandon*, 635 F.2d at 973 n. 1 (finding that plaintiffs sought to vindicate rights of student prayer group); *Trachtman*, 563 F.2d at 514 n. 1 (finding that plaintiffs sought to vindicate rights of student newspaper). Because the Student Government does not have a continuing stake in this litigation, this Court finds that the Student Plaintiffs' claims for declaratory relief are moot.[8]

### B. Speaker Plaintiffs

Plaintiffs contend that Speaker Plaintiffs Plummer and Clay "often speak at York College and other campuses administered by CUNY and sometimes receive fees for their speeches," and therefore have stand-

---

**8.** The disciplinary charges against Student Plaintiffs Ford, Plata, and Walcott pending at the time this litigation commenced have since been dismissed. The Student Plaintiffs have failed to show a likelihood of being subjected to the same action by Defendants, thus mak-

ing the "capable of repetition, yet evading review" exception to the mootness doctrine inapplicable here. *See Cook*, 992 F.2d at 20. Therefore, no live case or controversy exists and the Student Plaintiffs have no personal stake in the outcome of this case.

ing to seek declaratory relief "to prevent future violations of their rights to speak and be paid at York College and other [CUNY] campuses...." (Appellate Br. for Pls.-Appellants at 52.)

This Court cannot grant declaratory relief unless the Speaker Plaintiffs can identify a specific injury they have suffered and demonstrate a likelihood of future injury by York College and/or other CUNY schools. *See Deshawn E. by Charlotte E.*, 156 F.3d at 344. Although the Speaker Plaintiffs have identified a specific pecuniary injury that they suffered as a result of Defendants' actions in 1995, *see supra* at V, there is no allegation that they were deprived at any time thereafter of the right to speak at York College or CUNY, or that they were ever denied honoraria for their speeches. (*See* J.A. at A–153–54, ¶ 7 (Decl. Viola Plummer); J.A. at A–157, ¶ 6 (Decl. William Clay).) The Speaker Plaintiffs have thus failed to show that they have a reasonable expectation of being subjected to the same injurious action again. *See Bordell*, 922 F.2d at 1061. Hence, this Court finds that they lack standing to seek declaratory relief.

### CONCLUSION

For the foregoing reasons, this Court finds that (1) Plaintiffs' Complaint fails to set forth any claim for relief based on Defendants' actions with respect to the 1993 and 1994 BSD events; (2) Defendants' failure to submit affidavits or deposition testimony from Reynolds, Diaz, McCabe, and Elique does not preclude a grant of summary judgment; and (3) Defendants met their burden at the summary judgment stage as to Plaintiffs' four claims for declaratory relief. This Court finds that it need not reach the issue of whether Defendants Reynolds, Diaz, Minter, Brown, McCabe, and Elique are entitled to qualified immunity, since (1) the Student

Plaintiffs lack standing to bring a claim for money damages, and (2) the Speaker Plaintiffs (a) lack standing to bring a claim for money damages with respect to the short delay in the commencement of their presentations, and (b) have failed to satisfy the requirements for a successful First Amendment retaliation claim. Accordingly, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is directed to close this case.

SO ORDERED.